United States District Court
Eastern District of Michigan

---------------------------------------------------X
                                        :

Major Daniel Murray,                    :      Case Number 12-cv-14408
                                          :      Honorable Bernard A. Friedman

          Plaintiff,                  :      Magistrate Judge Mona K. Majzoub
                                          :

v.                                           :
                                          :

Chrysler Group, LLC d/b/a Chrysler,     :
                                          :

and                                         :
                                          :

ASI Consulting Group, LLC d/b/a ASI,     :
                                          :

          Defendants.              :
---------------------------------------------------X

| Pitt, McGehee, Palmer, Rivers & Golden, P.C. | Siciliano Mychalowych & Van Dusen, PLC |
|---|---|
| Michael L. Pitt (P22469) | Joseph A. Siciliano (P36904) |
| Kevin M. Carlson (P67704) | Lindsay James (P66778) |
| Attorneys for Plaintiff | Attorneys for Defendant ASI |
| 117 West Fourth Street, Suite 200 | 37000 Grand River Avenue, Suite 350 |
| Royal Oak, Michigan 48067 | Farmington Hills, Michigan 48335 |
| Telephone: 248.398.9800 | Telephone: 248.442.0510 |
| Facsimile: 248.398.9804 | Facsimile: 248.442.0518 |
| mpitt@pittlawpc.com | jsiciliano@smv-law.com |
| kcarlson@pittlawpc.com | ljames@smv-law.com |

-----------------------------------------------------------------------------------------------------------X

## DEFENDANT ASI CONSULTING GROUP, LLC'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendant ASI Consulting Group, LLC, through its undersigned counsel, for its motion to dismiss Plaintiff Major Daniel Murray's First Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), states as follows:

1. The following are facts taken from Plaintiff Major Daniel Murray ("**Plaintiff**") First Amended Complaint.

2. Plaintiff was formerly an employee of Defendant ASI Consulting Group, LLC ("**ASI**"). (**Doc. #3, ¶14**). Plaintiff worked under the terms of an Employment Agreement, which, although not attached to the First Amended Complaint, is referenced throughout and which Plaintiff purports to paraphrase throughout. (***See, e.g.*, Doc. #3, ¶¶17, 23, 64(a-b)**).

3. Because the Employment Agreement contains terms that one or more parties may deem confidential, the Employment Agreement will be submitted to the Court for an *in camera* review, although Plaintiff will not be able to contend that any of relevant language cited in the motion is misquoted or incomplete,

4. Directly above Plaintiff's signature of the Employment Agreement, he agreed:

> **INTENDING TO BE LEGALLY BOUND, the parties have executed this Agreement on the day and year first above written.** *By signing below Employee acknowledges and signifies that he has carefully read this entire agreement and has had time to console the terms, including the opportunity to have it read by independent counsel, and fully understands and agrees to all provisions*.

(**Employment Agreement, p. 6**) (**caps, bolding, and italics in original**).

5. As alleged by Plaintiff, "ASI is a global leader in quality management and methodologies, such as Design for Six Sigma (DFSS)." (**Doc. #3, ¶15**).

6.   As alleged by Plaintiff, "In January 2008, while Murray was still employed with ASI, ASI assigned Murray to its client, Chrysler, in a role known as 'DFSS Master Blackbelt.'" (**Doc. #3, ¶18**).

7.   Plaintiff stipulated in the Employment Agreement that certain information provided to Plaintiff was "Confidential and Proprietary Information" and that Plaintiff would not disclose the same during or after employment with ASI ("Employee [Plaintiff] understands and hereby acknowledges . . ."; "Employee hereby agrees that he shall not, at any time, either during or subsequent to his employment hereunder, use, copy, reveal, report, publish, transfer or otherwise disclose to any person, corporation, or other entity, any of the Company's [ASI's] Confidential and Proprietary Information without the prior written consent of the Company, except for use on behalf of the Company in connection with the Company's business."; "The obligations and restrictions governing the Confidential and Proprietary Information shall survive the termination and expiration of this Agreement, and shall continue in effect indefinitely"). (**Employment Agreement, ¶5**).

8.   Plaintiff also agreed that the Confidential and Proprietary Information provided to Plaintiff by ASI was the property of ASI. (**Employment Agreement, ¶5**).

9.   As alleged by Plaintiff, ASI lawfully terminated Plaintiff on April 6, 2010. (**Doc. #3, ¶19**).

10.   As alleged by Plaintiff, "In October 2011, more than 18 months after his termination with ASI, Murray started direct employment with Chrysler as a DFSS Master Blackbelt specialist." (**Doc. #3, ¶20**). Therefore, Plaintiff was now doing for Chrysler what Plaintiff had done as an employee of ASI.

11.     As alleged by Plaintiff, "Murray's employment with ASI had a non-compete provision that prohibited Murray from conducting business with any ASI client for two years after his termination and prohibited Murray from using ASI's methodologies for other work at any time following his termination." (**Doc. #3, ¶17**).

12.     Plaintiff is referring to paragraph 6 of the Employment Agreement, which provides:

(a)     Employee hereby agrees that during the period of Employee's employment with the Company and **for a period of (2) years from the date of termination thereof, he shall not**, either directly or indirectly, whether individually, or as a stockholder, partner, member, owner, **employee**, consultant, agent, advisor or creditor of any business or in any other capacity, **do any of the following**:

i.      **call upon, solicit, contact, service or accept any business from any Company Client** (as herein defined), or

ii.     take any action to induce any Company Client (as herein defined) to cease any of their business with the Company or to divert any business or business opportunity with the Company to himself or to any other person or entity.

iii.    For purposes of this Agreement, **"Company Client"** shall be defined as any person or entity **for whom the Company has called upon, solicited, contacted or provided services to at the time of the termination of Employee's employment with the Company**, or has called upon, solicited, contacted or provided **services to at the time of the termination of Employee's employment with the Company**, or has called upon, solicited, contacted or **provided services to at the time of the termination of Employee's employment with Company**, or has called upon, solicited, contacted or provided services during the eighteen (18) month period preceding the termination of Employee's employment with the Company.

(b)     Employee hereby further agrees that, **after termination of this Agreement**, and notwithstanding anything contained herein to the contrary, **will not**, directly or indirectly, **engage in any consulting services or otherwise work anywhere at any time using the Company methodologies pertaining to** Robust Engineering, Taguchi Methods, **Design For Six Sigma** and/or L.E.O. (Listen, Enrich and Optimize) **or any other Company Confidential and Proprietary Information**. If

Major D. Murray shall continue to use the Company Methodologies pertaining to Robust Engineering, Taguchi Methods, Design For Six Sigma and/or L.E.O. or any other Company Confidential and Proprietary Information after termination, Major D. Murray shall (without prejudice to any other remedies that may be available to the Company) **be liable to the Company for all profits, gains and gross receipts arising or accruing to Major D. Murray from such use**. Employee acknowledges and agrees that the provisions of this paragraph **shall not limit or restrict any additional remedies available to the Company for breach of this Agreement or unauthorized use of the Company Methodologies** pertaining to Robust Engineering, Taguchi Methods, **Design For Six Sigma** and/or L.E.O. or any other Company Confidential and Proprietary Information, **and that the obligations and restrictions of this Section 6(b) shall survive the expiration of this Agreement and continue in effect indefinitely**.

In the event that any portion of this noncompetition agreement is deemed not to be enforceable by a Court of competent jurisdiction because it is deemed overly broad in terms of time or the geographic area covered, this noncompetition agreement shall not be void but shall be modified to extend through a reasonable time period and/or geographic area.

**(Employment Agreement, ¶6)**.

13. It is undisputed that Chrysler is a "Company Client" of ASI. **(Doc. #3, ¶18)**.

14. Further, it is undisputed that Plaintiff started working for Chrysler in October 2011 (approximately 18 months after termination of his employment with ASI), which is fewer than two years.

15. Plaintiff claims that the non-compete with ASI was known to Chrysler. **(Doc. #3, ¶21)**. Although Plaintiff is careful not to say when Chrysler became aware of the non-compete, whether that is true may be a matter of dispute between Plaintiff and Chrysler. Above all, Chrysler's knowledge of the non-compete has no impact on ASI's rights to assert rights under same.

16. Plaintiff alleges that in February 2012, "ASI contacted Chrysler about Murray's non-compete agreement." **(Doc. #3, ¶23)**.

17.     April 2010 through February 2012 is 22 months.

18.     22 months is less than two years (24 months).

19.     Plaintiff claims that in April 2012, Chrysler terminated Plaintiff.  (**Doc. #3, ¶27**).

20.     On information and belief, Plaintiff's employment with Chrysler was "at will."

21.     Plaintiff does not allege that any contract provision in any employment agreement, collective bargaining, etc. prevented Chrysler from terminating Murray's employment.

22.     Plaintiff alleges that on April 6, 2012, his non-compete term ended.  (**Doc. #3, ¶25**). That is a legal issue that is addressed in ASI's Brief in Support.  ASI contends that under Michigan law, and based on general fairness, a non-compete term is tolled when the employee is in breach of his contract and is working in violation of the agreement; i.e., ASI does not lose the benefit of the non-compete agreement covenant, including its two-year bargain simply because the former client breached the contract and hid his new employment from his former employer.  *See* Thermatool Corporation v. Alpha Industries, Inc., 227 Mich. App. 366, 375; 575 N.W.2d 334 (1998) ("In cases where a party has flouted the terms of a noncompetition agreement, the court should be able to fashion appropriate equitable relief despite the fact that the parties did not expressly provide for such relief in their agreement. Furthermore, as courts allowing extensions of the terms of noncompetition agreements have found, it may not be possible to determine monetary damages with any degree of certainty. Where this is the case, the breaching party should not be rewarded because the agreement has already expired.").

23.     Plaintiff alleges that Chrysler circulated a proposed separation agreement that addressed Murray's employment with Chrysler and issues between ASI and Chrysler based on Chrysler's hiring of ASI when a non-compete prevented the same (which was never executed).  Although not attached to the First Amended Complaint, it is referenced throughout and Plaintiff purports to paraphrase the same throughout.  (***See, e.g.*, Doc. #3, ¶¶24, 28-31, 34, 39, 41-43, 52-54, 64(c))**; (**"Proposed Separation Agreement"**).

24.     Because the Proposed Separation Agreement contains terms that one or more parties may deem confidential, should Plaintiff contend that the relevant language cited in the motion is misquoted or incomplete, the entire Proposed Separation Agreement can be submitted to the Court for an *in camera* review if requested.

25.     Notwithstanding the fact that the Proposed Separation Agreement was never signed, Plaintiff alleges that Section 7 of the proposal provided that Chrysler and ASI will not hire each other's employees if said employees are bound by non-compete clauses. (**Doc. #3, ¶30**).  That is <u>not</u> what Section 7 actually says.  ASI does not anticipate that any party will dispute that Section 7 actually says:

> In consideration for the other having entered into this Agreement, Chrysler and ASI agree that each respective entity will not, directly or indirectly hire, as an employee, consultant, contractor or in any other capacity, any employee of the other who is subject to a written agreement **with the other containing a non-compete or no-hire provision without prior notice and discussion between them**.[1]

In essence, all this language provides is that before one side is to hire another side's employee, where said employee is bound by a non-competition covenant, the one side

---

[1]     Again, if Plaintiff somehow disputes this, ASI can submit the Proposed Separation Agreement to the Court for *in camera* review or upon entry of a protective order to assure the document's confidentiality and non-availability to the general public.

must first give the other side notice and then there must be a discussion regarding same.

26.  The Proposed Separation Agreement was never signed.

27.  Plaintiff sued Chrysler.  Plaintiff later amended his Complaint to add ASI as a party.

28.  In Count I, Plaintiff alleges the above, alleged actions of ASI and Chrysler amount to a combination, conspiracy, or contract to engage in a restraint of trade or commerce that allegedly violates Section 1 of the Sherman Antitrust Act (15 USC §1).

29.  Plaintiff does not allege that anyone in the world was not employed as a result of the alleged combination, conspiracy, and contract that was never signed.

30.  In Count II, Plaintiff alleges that the above, alleged actions of ASI and Chrysler violate Michigan's Antitrust Reform Act (MCL § 445.772).  The claim is essentially identical to the claim under the Sherman Act.

31.  In Count III, Plaintiff alleges that the above, alleged actions of ASI amount to a "tortious interference" of the business relationship between Chrysler and Plaintiff. Plaintiff claims it was improper for ASI to contact Chrysler about the non-competition covenant.  Plaintiff also claims that it would have been false for ASI to allege: (i) that Plaintiff was subject to a non-compete agreement; (ii) that ASI has a claim against Chrysler "since the indefinite duration and the restricted work are unreasonable"; and (iii) to threaten suit against Chrysler.  (**Doc. #3, ¶64**).  Without explaining why, Plaintiff further alleges that these false claims by ASI were the cause of Chrysler terminating his employment.  (**Doc. #3, ¶65**).

32.  On February 6, 2013, counsel for ASI sent a lengthy communication to counsel for Plaintiff, outlining ASI's reasons as to why the First Amended Complaint against ASI

7

should be dismissed.  The correspondence was an effort to solicit a conference and ultimately to obtain Plaintiff's concurrence to dismiss the First Amended Complaint against ASI.  (**Exhibit 1 – February 6, 2013 letter of Siciliano to Pitt**).  Counsel for Plaintiff took the issue under consideration but later advised the undersigned that Plaintiff would not stipulate to dismissal.  (**Exhibit 2 – February 25, 2013 email of Carlson to Siciliano**).

WHEREFORE, based on these facts, and based on the legal arguments in the attached Brief in Support, Defendant ASI Consulting, LLC requests that this Court dismiss the First Amended Complaint in its entirety, with prejudice, award ASI its costs and attorney fees based on Plaintiff's unreasonable withholding of concurrence to dismiss the First Amended Complaint, and award such other relief as the Court deems appropriate under the circumstances.

Siciliano Mychalowych & Van Dusen, PLC

Dated: February 27, 2013          By:\_\_\_/s/ Joseph A. Siciliano_____
Farmington Hills, Michigan        Joseph A. Siciliano (P36904)
                                  Lindsay James (P66778)
                                  Attorneys for Defendant
                                  ASI Consulting Group, LLC

## <u>INDEX TO DEFENDANT'S BRIEF IN SUPPORT</u>

Statement of the Issues……………………………………………………………………1

Controlling or Most Appropriate Authorities……………………………………………..2

Argument…………………………………………………………………………………3

       Standard of Review…………………………………………………………………..3

      A.     Plaintiff's Count I, based on the Sherman Antitrust Act, should be dismissed…...4

            1.     Plaintiff competed in breach of the Employment Agreement within the two-year contract term.  This term is enforceable under Michigan and federal law………………………………………………………………4

            2.     Section 7 of a Proposed Separation Agreement (that was never signed) does not violate the Sherman Act…………………………………………8

      B.     Plaintiff's Count II, based on the Michigan Antitrust Reform Act, should be dismissed……………………………………………………………………10

      C.     Plaintiff's Count III, tortious interference with a business relationship, should be dismissed……………………………………………………………………11

Relief Requested………………………………………………………………………15

Notice of Hearing……………………………………………………………………*post*

Certificate of Service…………………………………………………………………..*post*

## **<u>STATEMENT OF THE ISSUES</u>**

Plaintiff has filed two anti-trust claims against ASI (one under the Sherman Act and one under the Michigan Anti-Trust Reform Act) and has asserted one claim against ASI alleging tortious interference with contract.  The legal question is whether any of these causes of action state claims upon which relief may be granted.  Based on the facts as set forth in the Motion and the analysis of the law in the attached Brief in Support, ASI believes Plaintiff has failed to assert claims against ASI upon which relief may be granted.

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

*Care Heating & Cooling, Inc. v. Am. Std., Inc.*,
427 F.3d 1008 (6th Cir. 2005)

*Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*,
511 F.3d 535 (6th Cir. 2007)

*Lektro-Vend Corp. v. Vendo Co.*,
660 F.2d 255 (7th Cir. 1981)

*Rooyakker & Sitz, PLLC v. Plante & Moran, PLLC*,
276 Mich. App. 146; 742 N.W.2d 409 (2007)

*Thermatool Corp. v. Borzym*,
227 Mich. App. 366; 575 N.W.2d 334 (1998).

Mich. Comp. Laws § 445.774a

## BRIEF IN SUPPORT OF MOTION TO DISMISS
## PLAINTIFF'S FIRST AMENDED COMPLAINT

## ARGUMENT

### Standard of Review

The procedural vehicle for this motion is Federal Rule 12(b)(6).  This Court has held:

> In order to survive a motion for dismissal, a complaint must present allegations of fact that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Although the pleadings need not contain "detailed factual allegations," they must nevertheless go beyond labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Id*. at 570. In doing so, the complaint must plead "sufficient factual matter" that, if accepted as true, would "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). A claim is plausible on its face if the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).
>
> In reviewing a motion to dismiss, we construe the complaint in the light most favorable to the plaintiff, accepting all factual allegations as true, and drawing all reasonable inferences in the plaintiff's favor. *Hunter v. Sec'y of United States Army*, 565 F.3d 986, 992 (6th Cir. 2009) (quoting *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)). This principle does not extend, however, to legal conclusions stated as facts or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).

*NAACP v. Snyder*, No. 11-15385; 2012 U.S. Dist. Lexis 48926, *9-10 (E.D. Mi. April 6, 2012).

If the complaint makes reference to agreements outside the pleadings and relies on the same in support of the claims, the Court may consider them without transforming the motion into a Rule 56 motion.  *See* Rondigo, L.L.C. v. Twp. of Richmond, 641 F.3d 673, 680-681 (6th Cir. 2011). The Court can review the terms of the two referenced contractual documents as a matter of law unless the Court finds some ambiguity requiring factual resolution.  *See* Wilkie v. Auto-Owners Ins. Co., 469 Mich. 41, 47-48; 664 N.W.2d 776 (2003).

3

A.      **Plaintiff's Count I, based on the Sherman Antitrust Act, should be dismissed.**

15 USC § 1 provides, in part, "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."  "The plaintiff shoulders the burden of proving the unreasonableness of a restraint unless the challenged activity is per se violative of the Act." *Lektro-Vend Corp. v. Vendo Co*., 660 F.2d 255, 265 (7th Cir. 1981).

1.      Plaintiff competed in breach of the Employment Agreement within the two-year contract term.  This term is enforceable under Michigan and federal law.

There are certain undeniable, material facts based the allegations in Plaintiff's First Amended Complaint:

- Paragraph 19 alleges that ASI terminated Plaintiff's employment on April 6, 2010;

- Paragraph 20 alleges that Plaintiff started working for Chrysler in October 2011.  That is approximately 18 months after ASI's termination of Plaintiff.

- Paragraph 23 alleges that in February 2012, ASI contacted Chrysler about Plaintiff's non-competition agreement.  That is approximately 22 months after ASI's termination of Plaintiff.

- Paragraph 17 alleges that the Employment Agreement has non-competition covenants, including one that continues for at least 24 months following termination.

Therefore, there is no reasonable dispute that, according to Plaintiff, ASI raised the non-competition covenant issue with Chrysler within the two-year non-competition period. Therefore, by contract, Plaintiff concedes that ASI had the right to raise this issue with Chrysler: A former employee, who covenanted not to work for a Company Client for two years, began at

4

18 months working for the same Company Client to which he was assigned by ASI, presumably doing the same job he was doing while working for ASI, and in all likelihood using ASI's techniques and methodologies in which ASI has a confidential and proprietary interest and which Plaintiff agreed not to use.  The fact that Chrysler terminated Plaintiff's at-will contract before or after the 24 month period is not ASI's fault.

Throughout the First Amended Complaint Plaintiff raises the spectre that the 24-month term is unreasonable.  As discussed below, it is not.

Michigan law governs the Employment Agreement.  (**Employment Agreement, ¶11**). This Court has held that choice of law provisions in employment agreements are enforceable "to ensure that [employers] will have some certainty in defending its rights in suits with its employees all over the country."  *Lowry Computer Products, Inc. v. Head*, 984 F.Supp. 1111, 1115-16 (E.D. Mi. 1997) (Gadola).  Michigan enforces covenants not to compete and this Court has repeatedly upheld them.  "Agreements not to compete are permissible under Michigan law as long as they are reasonable."  *Thermatool Corp. v. Borzym*, 227 Mich. App. 366, 372; 575 N.W.2d 334 (1998).  MCL § 445.774a provides:

> (1) An employer may obtain from an employee an agreement or covenant which protects an employer's reasonable competitive business interests and expressly prohibits an employee from engaging in employment or a line of business after termination of employment if the agreement or covenant is reasonable as to its duration, geographical area, and the type of employment or line of business. To the extent any such agreement or covenant is found to be unreasonable in any respect, a court may limit the agreement to render it reasonable in light of the circumstances in which it was made and specifically enforce the agreement as limited.

*See* ACS Consultant Co. v. Williams, No. 06-11301; 2006 U.S. Dist. Lexis 16785, *16-17 (E.D. Mi. April 6, 2006) (Zatkoff) ("[T]he courts of the Eastern District of Michigan have upheld as reasonable similar ACS agreements in the past. Moreover, reasonable covenants not to compete against (former) employers are regularly recognized in Michigan."); Robert Half Intern. v. Van

Steenis, 784 F.Supp. 1263, 1271 (E.D. Mi. 1991) (Rosen) ("The Michigan legislature has specifically enacted that covenants not to compete in employment agreements are not only enforceable, but also specifically enforceable by injunction.").

The question then is whether the two year term is reasonable.  Published cases in Michigan and in this circuit answer that question is in the affirmative.  *See* Rooyakker & Sitz, PLLC v. Plante & Moran, PLLC, 276 Mich. App. 146, 158; 742 N.W.2d 409 (2007) ("The clause only prohibited the individual plaintiffs from soliciting or providing services to Plante & Moran's clients for a two-year period. Therefore, the duration of the agreement was reasonable.").  The Sixth Circuit has held that Michigan courts and federal courts have upheld durations up to five years.  *See* Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp., 511 F.3d 535, 547, 549 (6th Cir. 2007) ("The duration is limited to two years, a period which Michigan courts have consistently upheld as reasonable.").  Therefore, the covenant term is enforceable.  ASI not only would be within its contract rights to contact Chrysler regarding the same, but would also be acting in accordance with Michigan law.

The existence of a covenant like this does not violate the Sherman Act either:

> Legitimate reasons exist to uphold noncompetition covenants even though by nature they necessarily restrain trade to some degree. **The recognized benefits of reasonably enforced noncompetition covenants are by now beyond question**. . . . The district court correctly concluded that covenants not to compete are valid if (1) ancillary to the main business purpose of a lawful contract, and (2) necessary to protect the covenantee's legitimate property interests, which require that the covenants be limited as is reasonable to protect the covenantee's interests."

*Lektro-Vend Corp. v. Vendo Co*., 660 F.2d 255, 265 (7th Cir. 1981) (emphasis added).  The Employment Agreement is a lawful contract; and prohibiting former employees from soliciting and working for current clients is a legitimate business purpose, particularly where this employee may be personally using information provided to him exclusively through the course of the

employment, using training techniques and methodologies for which Chrysler paid ASI. "[P]reventing the anticompetitive use of confidential information is a legitimate business interest." *Rooyakker & Sitz, PLLC v. Plante & Moran, PLLC*, 276 Mich. App. 146, 158; 742 N.W.2d 409 (2007). "Reasonable covenants may protect such legitimate interests as trade secrets, confidential information, close contact with the employer's customers . . . ." *Kelsey-Hayes Co. v. Maleki*, 765 F. Supp. 402, 407 (E.D. Mi. 1991). *See also* Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp., 511 F.3d 535, 547 (6th Cir. 2007); ACS Consultant Co., 2006 U.S. Dist. Lexis 16785, *17-18. The fact that Plaintiff, after he was terminated, accepted a position at Chrysler, a client that ASI was/is at the course of providing consulting services, and presumably used information gained from ASI, is nearly evidence *per se* of irreparable harm to ASI. *See* Gateway 2000, Inc. v. Livak, 19 F. Supp.2d 748, 753 (E.D. Mi. 1998) (Feikens) (it "creates a strong inference that he will be using this information in his new job. Since he has already acknowledged that using this information will cause damage to Gateway that will be impossible to ascertain, I find a strong probability of irreparable harm."). This is because "the loss of fair competition that results from the breach of a non-competition covenant is likely to irreparably harm an employer." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992). If ASI's former employees can simply ignore non-competition covenants, take ASI's confidential and proprietary information (which the employee learned while working for ASI) and use it freely by directly working for an ASI client, ASI loses its competitive advantage. The Court should dismiss Plaintiff's claim which seeks to have this Court put a judicial stamp of approval on Plaintiff's unfair business practice.

2.    <u>Section 7 of a Proposed Separation Agreement (that was never signed) does not violate the Sherman Act</u>.

Plaintiff's First Amended Complaint provides a misleading analysis of the meaning of Section 7 of the agreement Chrysler proposed to ASI and Plaintiff.  As noted in the Motion, Section 7 merely proposed that before one side (ASI/Chrysler) were to hire another side's employee, where said employee is bound by a non-competition covenant, the one side must (a) first give the other side notice and (b) there must then be a discussion regarding same.  Nothing more.  That's not a restraint on trade.  That is a recognition of the validity of non-compete agreements and the professional relationship between Chrysler and ASI to give prior notice to each other and then talk before simply hiring each other's restricted employees.

Additionally, as noted, the Proposed Separation Agreement was never signed.  "Rule of reason analysis requires a showing of anti-competitive market effect by the plaintiff."  *Davis-Watkins Co. v. Service Merchandise*, 686 F.2d 1190, 1202 (6th Cir. 1990).  Plaintiff will obviously never make that showing because no one in commerce was affected by the unsigned agreement.  Similarly, the Sherman Act also requires a showing of an adverse economic effect:

> [A]ny rule of reason analysis requires **a showing of anticompetitive market effect**. To hold otherwise would ignore the very purpose of the antitrust laws which were enacted for the protection of competition, not competitors. **Congress has consistently refused to create a private federal remedy for unfair competition**. **Section 1 cannot supply private parties with a tool to redress ordinary business torts** because § 1 forbids only those restraints damaging to competition. . . . **A showing of adverse market impact has been required in § 1 cases specifically involving noncompetition covenants**.

*Lektro-Vend Corp.*, 660 F.2d at 268-269 (internal citations omitted) (emphasis added).  In addition, the Sixth Circuit has held that "Because protecting competition is the *sine qua non* of the antitrust laws, a complaint alleging only adverse effects suffered by an individual competitor cannot establish an antitrust injury."  *Care Heating & Cooling, Inc. v. Am. Std., Inc.*, 427 F.3d

1008, 1014-1015 (6th Cir. 2005).  Plaintiff alleges no impact on anyone other than him.  And any impact to *him* is what he should have expected and frankly <u>deserved</u> based on the contract he agreed to and consistent with District caselaw:

> Defendant Eidnes brought this harm upon herself. She was fully aware of the provisions of her contract . . . . By breaking her agreement, Eidnes wilfully incurred the risk that Plaintiff might enforce the terms of the non-competition agreement.

*Kelly Servs. v. Eidnes*, 530 F. Supp. 2d 940, 952 (E.D. Mi. 2002) (Feikens).   *See also* RMS Services-USA v. Houston, 2007 U.S. Dist. Lexis 32977, *9 (E.D. Mi. May 4, 2007) (Zatkoff) ("Houston argues he will suffer substantial economic harm if he is prevented from working from Discovery. However, Houston freely entered into the contract containing the noncompete agreement. Furthermore, Houston's economic damage could be quantified, and is thus not irreparable, unlike the damage that would be suffered by Plaintiff if Houston continued to violate the noncompete agreement."); ACS Consultant Co., 2006 U.S. Dist. Lexis 16785, *17-18. ("[T]he injunctions sought here do not impose substantial harm on the individual defendants because the injunctions sought merely track the restrictive language of the Employment Agreements. Moreover, as each of the individual defendants voluntarily entered into his Employment Agreement and agreed to the limitations that Plaintiff now seeks to enforce, they cannot assert that, even if there is any harm, such harm is being imposed upon them unwillingly.").

Beyond the lack of legal validity to Plaintiff's claim, there is a background of nonsense to it.  If this unsigned agreement containing innocuous language is the purported "conspiracy" to be anti-competitive, then Plaintiff would have been a part of the conspiracy because Plaintiff is proposed to be a *party* of the contract.   That is to say, the only way this proposed contract could have entered commerce to have any possible affect would have been if Plaintiff had agreed to it.  Suffice it to say, a proposed and then failed global settlement of claims between adverse parties

is not a violation of the Sherman Act.  Plaintiff's attempt to "make a federal case" about his frustration with the terms of the deal to which he agreed and his inability to reach an agreement with these Defendants in settlement should be rejected, and Count I should be dismissed.

**B.    Plaintiff's Count II, based on the Michigan Antitrust Reform Act, should be dismissed.**

"A contract, combination, or conspiracy between 2 or more persons in restraint of, or to monopolize, trade or commerce in a relevant market is unlawful."  Mich. Comp. Laws § 445.772. Michigan's antitrust statute is interpreted consistent with the Sherman Act.  *See* Perceptron, Inc. v. Sensor Adaptive Machs., Inc., 221 F.3d 913, 919 & n.6 (6th Cir. 2000) ("The Michigan Antitrust Reform Act, Mich. Comp. Laws Ann. § 445.772 (West 1989), adopted language from and is interpreted consistent with the Sherman Act, 15 U.S.C. § 1.").  Plaintiff's claim under the Michigan statute is identical to the claim under the federal statute and Plaintiff suggests of no damages or facts under the Michigan claim that were not otherwise covered by the federal claim.  The Sixth Circuit has held that the specific statute addressing the validity of non-competition covenants (MCL § 445.774a) trumps the general state antitrust law:

> The Michigan Antitrust Reform Act generally prohibits any "contract, combination, or conspiracy between 2 or more persons in restraint of, or to monopolize, trade or commerce." Mich. Comp. Laws § 445.772 (2002). However, the statute [MCL § 445.774a] explicitly authorizes agreements not to compete as long as they are reasonable.

*Certified Restoration Dry Cleaning Network*, 511 F.3d at 546.  This is also recognized within Michigan's antitrust statute.  "This act shall not apply to a transaction or conduct specifically authorized under the laws of this state."  Mich. Comp. Laws § 445.774(4).  *See also* BPS Clinical Labs. v. Blue Cross & Blue Shield, 217 Mich. App. 687, 700; 552 N.W.2d 919 (1996).  As the discussion above makes clear, the covenant at issue is reasonable and there was nothing improper for all parties (including Plaintiff) to attempt to negotiate a settlement among all

parties, which would have included the obligation that ASI and Chrysler give each other notice and then first talk before hiring employees with non-compete agreements. Therefore, for this and other reasons discussed above, Count II should be dismissed.

### C.    Plaintiff's Count III, tortious interference with a business relationship, should be dismissed.

Plaintiff claims, "Under Michigan law, it is unlawful for a third party to intentionally interfere with a valid business relationship to cause the termination of the relationship." (**Doc. #3, ¶60**). With regard to such claims, published circuit precedent provides:

> Under Michigan law, a claim of tortious interference with business relationship requires proof of (1) a valid business relationship or expectancy; (2) knowledge of that relationship or expectancy on the part of the defendant; (3) an intentional interference by the defendant inducing or causing a breach or termination of that relationship or expectancy; and (4)[2] resulting damage to the plaintiff.

*Warrior Sports, Inc. v. NCAA*, 623 F.3d 281, 286-287 (6th Cir. 2010). With regard to the third element, plaintiff must "demonstrate that the third party was induced either to breach the contract or to break off the prospective business relationship by an intentional act that is either (1) wrongful per se; or (2) lawful, but done with malice and unjustified in law." *Id.* at 287 (quotes and citation omitted).

Legitimate business reasons negate the intent or malicious interference element of tortious interference with a contract. *See* BPS Clinical Labs, 217 Mich. App. at 699 ("Where the defendant's actions were motivated by legitimate business reasons, its actions would not constitute improper motive or interference."). *See also* Partner & Partner, Inc. v. Exxonmobil Oil Corp., No. 08-1590; 326 Fed. Appx. 892, 896 (6th Cir. May 4, 2009) (same). As noted

---

[2]    For whatever it is worth, with respect to whatever damages Plaintiff claims for Chrysler terminating the at-will relationship, damages for tortious interference with an at-will contract are usually highly speculative and generally only nominal damages are awarded. *See* Health Call v. Atrium Home & Health Care Servs., 268 Mich. App. 83, 107; 706 N.W.2d 843 (2005).

above, even by Plaintiff's admissions, there is no dispute that any alleged ASI contact with Chrysler about Plaintiff's non-compete fell within the two-year term. There can be no tort committed if ASI is exercising its contractual rights; rights to which Plaintiff not only was aware of but stipulated to. Further, whether any alleged contact by ASI motivated Chrysler to terminate Plaintiff's at-will employment has nothing to do with ASI. ASI cannot be punished for putting the new employer on notice that said employee had previously agreed in writing to a non-compete covenant.

Based on these reasons, each Plaintiff's claims that ASI caused the termination, as set forth in Plaintiff's paragraph 64, are easy to dispose of:

- "*Falsely claiming to have a valid suit against Chrysler based on Section 6(a), which had expired when Murray was terminated*." (**Doc. #3 ¶64(a)**).

Note that the First Amended Complaint does not allege that ASI claimed to have a suit against Chrysler. But even assuming that were true, Plaintiff has conceded that any alleged ASI contact with Chrysler occurred when the non-compete was in effect. That Chrysler terminated Plaintiff at some point later is not and could not be attributable to anything improper on ASI's part. If anything, it is attributable to Plaintiff's own actions. Additionally, Plaintiff's belief that the non-compete expired on April 6, 2012 is incorrect. Michigan courts will extend the non-compete when a former employee is in violation of the same. That is to say, a breaching former employee like Plaintiff does not get "credit" during the six months he worked for Chrysler:

> [T]he better view is that, in appropriate circumstances, the term of a noncompetition agreement may be extended beyond its stated expiration date. Specific performance of an agreement may be an appropriate remedy where enforcement of the promise is necessary to avoid injustice. See *Giordano v Markovitz*, 209 Mich. App. 676, 680; 531 N.W.2d 815 (1995). **In cases where a party has flouted the terms of a noncompetition agreement, the court should be able to fashion appropriate equitable relief despite the fact that the parties did not expressly provide for such relief in their agreement**. Furthermore, as courts allowing extensions of the terms of noncompetition agreements have found, it may not be possible to

determine monetary damages with any degree of certainty. Where this is the case, **the breaching party should not be rewarded because the agreement has already expired**.  Although MCL 445.774a(1); MSA 28.70(4a)(1) does not address the proper relief in the event of a breach of a covenant not to compete, **it does allow a court to modify an unreasonable agreement and to specifically enforce the agreement as modified. We therefore infer that it is permissible for a court to specifically enforce a reasonable agreement**.

*Thermatool Corporation v. Alpha Industries, Inc*., 227 Mich. App. 366, 375; 575 N.W.2d 334

(1998) (emphasis added).   Judge Steeh has applied *Thermatool* to extend the duration of

covenants in an employment agreement, including a non-compete:

> A court may, in appropriate circumstances, extend injunctive relief beyond the term of a non-competition agreement where a party has "flouted the terms" of the agreement. See Thermatool Corp. v. Borzym, 227 Mich. App. 366, 375, 575 N.W.2d 334 (1998). **Superior is entitled to an extension of the six month non-solicitation agreement, a time limitation affixed by the Court, due to Bailey's demonstrated activities in soliciting Feuerer, Blocker, Scott, and Miller**. The prohibition against disclosing confidential information and trade secrets is indefinite, and needs no extension.

*Superior Consultant Co. v. Bailey*, No. 00-CV-73439; 2000 U.S. Dist. Lexis 13051, *36-37

(E.D. Mi. August 22, 2000) (Steeh) (emphasis added).  To the extent this is even an issue (i.e.,

Chrysler terminating the at-will relationship a few days after the 24 months elapsed), in a case

such as this, where there is no dispute that Plaintiff breached the non-compete covenant, the

Court should extend the non-compete to toll the 6 straight months where Plaintiff admittedly was

working for Chrysler; instead of rewarding a surreptitious, breaching former employee who has

no interest in performing the terms of the contract to which he agreed.

- "*Falsely claiming to have a valid suit against Chrysler based on Section 6(b), which is an illegal provision since the indefinite duration and restricted work are unreasonable*."  (**Doc. #3 ¶6(b)**).

Plaintiff is apparently referring to the legality of the confidentiality and proprietary

provision surviving the termination of the Employment Agreement.  This is a red herring.

Plaintiff is not challenging the legality of the duration of this obligation to which he agreed (not

13

to engage in consulting services or otherwise work using ASI techniques and methodologies pertaining to Robust Engineering Taguchi Methods, Design For Six Sigma, and/or L.E.O. (Listen, Enrich, and Optimize), or any other Confidential and Proprietary Information).  It is enough that Plaintiff was working for a Company Client within 24 months of his termination.

　　　To the extent the indefinite nature of Plaintiff's limitation is at issue, Plaintiff did not know ASI's techniques and methodologies pertaining to these areas before he worked at ASI; he agreed not to use them after; and he has no need or interest to use such techniques and methodologies in the future.  Companies like Chrysler pay ASI to teach those techniques and methodologies because of their proven effectiveness – why does Plaintiff think he was placed at Chrysler when he worked for ASI?  It is because ASI and Chrysler had a contract for those services.  Plaintiff is not allowed to take ASI's property, which ASI goes to great lengths to keep private and confidential (except with respect to paying customers who also agree to respect that privacy and confidentiality), and use it for himself at the expense of ASI.  An indefinite duration of confidentiality and proprietary provisions  is not only enforceable, *see* Superior Consultant, 2000 U.S. Dist. Lexis 13051, *36-37 ("The prohibition against disclosing confidential information and trade secrets is indefinite, and needs no extension"), but necessary under these circumstances.  (***Refer to cases cited supra*, pp. 6-7**).  ASI requests that this Court not reform the contract to change the terms of something Plaintiff agreed to, so as to allow this breaching former employee to use techniques and methodologies he didn't create and learned from ASI; in essence to allow him to work directly for Chrysler, providing Chrysler the same services he provided when he was with ASI.

- "*Falsely threatening to sue Chrysler to cause Murray's termination and to enter a no-hire agreement with Chrysler.*"  (**Doc. #3 ¶6(c)**).

This appears to be a hybrid of what Plaintiff has already alleged in sub-sections (a) and (b) of paragraph 64 and is equally unavailing.  It is unclear what Plaintiff means by a "false threat," nor is it clear what the basis would be for making such an allegation.  Nevertheless, if the suggestion is that ASI somehow threatened to sue Chrysler in February 2012 (because Plaintiff had a non-compete), then any such threat would be valid because the underlying premise would be *true*.  Additionally, as noted above, the so-called no-hire agreement was never entered into.

## RELIEF REQUESTED

Based on these facts in the motion and the legal arguments herein, Defendant ASI Consulting, LLC requests that this Court dismiss the First Amended Complaint in its entirety, with prejudice, award ASI its costs and attorney fees based on Plaintiff's unreasonable withholding of concurrence to dismiss the First Amended Complaint, and award such other relief as the Court deems appropriate under the circumstances.

Siciliano Mychalowych & Van Dusen, PLC

Dated: February 27, 2013            By:_/s/ Joseph A. Siciliano_____
Farmington Hills, Michigan          Joseph A. Siciliano (P36904)
                                    Lindsay James (P66778)
                                    Attorneys for Defendant ASI Consulting Group, LLC

United States District Court
Eastern District of Michigan

------------------------------------------------------X
                                                      :
Major Daniel Murray,                                  :          Case Number 12-cv-14408
                                                      :          Honorable Bernard A. Friedman
              Plaintiff,                              :          Magistrate Judge Mona K. Majzoub
                                                      :
v.                                                    :
                                                      :
Chrysler Group, LLC d/b/a Chrysler,                   :
                                                      :
and                                                   :
                                                      :
ASI Consulting Group, LLC d/b/a ASI,                  :
                                                      :
              Defendants.                             :
------------------------------------------------------X

## <u>NOTICE OF MOTION HEARING</u>

You are hereby notified to appear before District Judge Bernard A. Friedman at the United States District Court, Theodore Levin U.S. Courthouse, 231 W. Lafayette Boulevard, Detroit, Michigan. Please report to Room 100. The following motion is scheduled for hearing:

>       Defendant ASI Consulting Group, LLC d/b/a ASI's Motion to Dismiss
>       Plaintiff's Amended Complaint -- #

- MOTION HEARING: _____ ____, 2013

<u>**CERTIFICATE OF SERVICE**</u>

On February 27, 2013, I e-filed the above pleadings using the Court's ECF System which will provide service to all counsel of record as indicated on the service sheet.

Siciliano Mychalowych & Van Dusen, PLC

Dated: February 27, 2013          By:___/s/ Joseph A. Siciliano_____
Farmington Hills, Michigan        Joseph A. Siciliano (P36904)
                                  Lindsay James (P66778)
                                  Attorneys for Defendant ASI Consulting Group, LLC