UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAJOR DANIEL MURRAY,

    Plaintiff,                                                      Civil Action No. 12-CV-14408

vs.                                                            HON. BERNARD A. FRIEDMAN

CHRYSLER GROUP, LLC and
ASI CONSULTING GROUP, LLC,

    Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS AS TO COUNT I OF THE COMPLAINT AND DISMISSING COUNTS II AND III FOR LACK OF JURISDICTION**

This matter is presently before the Court on (1) the motion of defendant ASI Consulting Group, LLC ("ASI") to dismiss [docket entry 15] and (2) the motion of defendant Chrysler Group, LLC ("Chrysler") for judgment on the pleadings [docket entry 17]. Response and reply briefs have been filed. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide the motions without a hearing.

This is a wrongful discharge case. Plaintiff Major Daniel Murray alleges that he was employed by defendant ASI, a management consulting company, from July 2007 until April 2010. *See* First Am. Compl.("FAC") ¶ 14. During that time plaintiff performed work for some of ASI's clients, including Chrysler. Plaintiff was subject to a "non-compete provision that prohibited Murray from conducting business with any ASI client for two years after his termination and prohibited Murray from using ASI's methodologies for other work at any time following his termination from ASI." *Id.* ¶ 17. In April 2010 ASI terminated its employment relationship with plaintiff "because Chrysler reduced its contract with ASI." *Id.* ¶ 19. In October 2011 plaintiff


started working for Chrysler directly. *Id.* ¶ 20. What happened thereafter forms the heart of plaintiff's case:

> 23. In February 2012, ASI contacted Chrysler about Murray's non-compete agreement.
>
> 24. Later that month, Chrysler's attorney assured Murray that ASI and Chrysler would come to an agreement regarding his employment because both parties want to avoid a suit.
>
> 25. On April 6, 2012, the two year non-compete provision of Murray's non-compete agreement with ASI expired.
>
> 26. Murray was still employed by Chrysler on April 6, 2012, the date on which the two year non-compete provision between ASI and Murray expired.
>
> 27. On April 13, 2012, Chrysler terminated Murray.
>
> 28. Chrysler provided Murray with a proposed severance agreement and release that would waive and release any claim by Murray against ASI and Chrysler.
>
> 29. Section 5(a) and (c) of the proposed severance agreement released both ASI and Chrysler of all claims that arose out of Murray's employment and termination with Chrysler or ASI.
>
> 30. Section 7 of the proposed severance agreement stated that Chrysler and ASI will not hire each other's employees, who are subject to a non-compete agreement.[1]
>
> 31. ASI did not contribute to the severance pay that was offered to Murray by Chrysler.
>
> 32. The termination actions taken by Chrysler against Murray were a direct result of anti-competitive arrangements made between ASI

---

[1] In his response to defendants' motions, plaintiff indicates that this section of the proposed severance agreement stated: "Chrysler and ASI agree that each respective entity will not, directly or indirectly hire . . . any employee of the other who is subject to a written agreement with the other containing a non-compete or no-hire provision without prior notice and discussion between them." Pl.'s Resp. Br. at 28.

> and Chrysler.
>
> 33. The termination actions taken by Chrysler against Murray were the result of ASI's tortious interference with the business relationship between Murray and Chrysler.
>
> 34. The anti-competitive arrangements between ASI and Chrysler are reflected, at least in part, in the severance agreement proposed by Chrysler, which makes specific reference to such agreements.
>
> 35. As a direct result of the tortious interference and the antitrust violations connected to the termination of his employment with Chrysler, Murray has experienced and will continue to experience economic damages, . . .

FAC ¶¶ 23-35. Against this background, plaintiff asserts claims against Chrysler and ASI for antitrust violations under the Sherman Act, 15 U.S.C. § 1 (Count I), and under the Michigan Antitrust Reform Act, Mich. Comp. Laws § 445.772 (Count II); and against ASI for tortious interference with his business relationship with Chrysler (Count III). The Court's subject matter jurisdiction is premised on the federal question raised in Count I. *See* FAC ¶ 9.

Under Count I, plaintiff makes the following additional allegations in support of his federal antitrust claim:

> 39. At all relevant times, ASI and Chrysler formed an agreement, contract, combination or conspiracy with regard to the employment of personnel, including Murray, for purposes of the Sherman Antitrust Act.
>
> 40. ASI and Chrysler, both individually and in combination with one another, play a significant role in the interstate labor market for skilled employees.
>
> 41. The agreement, contract, combination or conspiracy between ASI and Chrysler is documented in writing, as reflected in the proposed severance agreement provided to Murray by Chrysler.
>
> 42. Notwithstanding their obligations under the Sherman Act, and in willful violation thereof, Chrysler and ASI's anti-competitive

3

> arrangement has had, or is likely to have, substantial and unreasonable anti-competitive effects in the relevant markets, including but not limited to:
>
>> a. Unreasonably limiting skilled employees, including Murray, from freely choosing between numerous employment opportunities throughout the nation;
>>
>> b. Unreasonably depriving a potential interstate employer of the benefit of free and open competition for a discrete group of skilled employees, including Murray.
>
> 43. ASI and Chrysler's no-hire agreement and other anti-competitive arrangements substantially and adversely affected interstate trade for skilled employees.
>
> 44. ASI and Chrysler's anti-competitive agreement, contract, combination or conspiracy proximately caused Murray's injury for purposes of the Sherman Antitrust Act.
>
> 45. The pro-competitive benefits, if any, of the arrangement between ASI and Chrysler do not outweigh the actual and likely anti-competitive effects of the agreement.
>
> 46. The anti-competitive arrangement between ASI and Chrysler unreasonably restrains trade and interstate commerce in violation of Section 1 of the Sherman Antitrust Act.

FAC ¶¶ 39-46. For relief plaintiff seeks, in addition to reinstatement and damages, a declaration "that ASI and Chrysler's settlement agreement is illegal because it is a *rule of reason* violation of Section 1 of the Sherman Act . . . ." *Id.* at 9 (emphasis in original).

The legal standards governing defendants' motions are well known:

> A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) allows the Court to make an assessment as to whether a plaintiff's pleadings have stated a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6). Under the Supreme Court's articulation of the Rule 12(b)(6) standard in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555–56, 570, 127 S.Ct. 1955, 1964–65, 1974, 167 L.Ed.2d 929 (2007), the Court must construe the complaint in favor of the plaintiff and determine whether plaintiff's

factual allegations present claims plausible on their face. This standard requires a claimant to put forth "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" the requisite elements of their claims. *Id*. 550 U.S. at 557, 127 S.Ct. at 1965. Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir.2007) (*citing Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965) (internal citations omitted); *see also* Fed.R.Civ.P. 8(a)(2) ("A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief [.]").

In determining whether a plaintiff has set forth a "claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (*quoting Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974), courts must accept the factual allegations in the complaint as true, *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965. This presumption, however, does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949. Therefore, to survive a motion to dismiss, a plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters*, 502 F.3d at 548 (*quoting Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964–65) (internal citations and quotations omitted).

Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of [a legal transgression], the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Iqbal*, 556 U.S. at 679, 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a) (2)) (internal citations omitted). In conducting its analysis, the Court may consider the pleadings, exhibits attached thereto, and documents referred to in the complaint that are central to the plaintiff's claims. *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir.1999).

*Pinchot v. Bank of America, N.A.*, 2012 WL 6591517, at *3 (E.D. Mich. Dec. 18, 2012). The Court applies the same standards in deciding a motion for judgment on the pleadings under Fed. R. Civ.

P. 12(c). *See Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010).

Plaintiff's Count I is brought under 15 U.S.C. § 1, which declares illegal "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations." Therefore, to state a claim under this section of the Sherman Act "a plaintiff must plead more than a restraint of trade; it must plead an agreement in restraint of trade." *Erie County v. Morton Salt, Inc.*, 702 F.3d 860, 867 (6th Cir. 2012). "A Section One complaint will survive a Rule 12(b)(6) motion to dismiss if it alleges facts sufficient to raise a plausible inference of an unlawful agreement to restrain trade." *Id.* at 869. In other words, "stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made. Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Twombly*, 550 U.S. at 556. Further,

> [t]o state a claim under the rule-of-reason test, a plaintiff must allege, inter alia, that the purportedly unlawful contract, combination, or conspiracy "produced adverse, anticompetitive effects within relevant product and geographic markets." *Crane & Shovel Sales Corp. v. Bucyrus-Erie Co.*, 854 F.2d 802, 805 (6th Cir.1988) (internal quotation marks and citation omitted); *see also Nat'l Hockey League Players Ass'n*, 419 F.3d at 473 ("[A] plaintiff alleging an unreasonable restraint on trade under the rule of reason theory must show significant anti-competitive effects of the challenged restraint"). The Sherman Act exists for "the protection of competition, not competitors," *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 338, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990), and thus "the foundation of an antitrust claim is the alleged adverse effect on the market." *Care Heating & Cooling*, 427 F.3d at 1014.

*Warrior Sports, Inc. v. Nat'l Collegiate Athletic Ass'n*, 623 F.3d 281, 286 (6th Cir. 2010). The complaint must allege that "the combination or conspiracy produced adverse, anticompetitive effects

within relevant product and geographic markets" and also "identify the relevant product and geographic markets." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 436-37 (6th Cir. 2008) (citations and internal quotation omitted). The complaint must contain "allegation[s] as to how the market has changed or been damaged" by the conspiracy. *Caudill v. Lancaster Bingo Co., Inc.*, 2005 WL 2738930, at *7 (S.D. Ohio Oct. 24, 2005) (dismissing the complaint, among other reasons, because it "fails to identify any competitors, it does not describe the market, nor does it discuss any market conditions").

In the present case, the complaint fails sufficiently to allege an agreement in restraint of trade. The only "agreement" identified in the complaint is not an agreement at all, but a term within a proposed, unexecuted severance agreement which, under Fed. R. Evid. 408, most likely cannot be considered, as plaintiff alleges that it arose during negotiations "regarding [plaintiff's] employment because both parties want to avoid a suit." FAC ¶ 24. Plaintiff alleges, but offers no supporting facts, that defendants formed a much larger "agreement, contract, combination or conspiracy with regard to the employment of personnel, including Murray, . . . as reflected in the proposed severance agreement provided to Murray by Chrysler." *Id.* ¶¶ 39, 41. In other words, plaintiff points to Section 7 (the "no-hire" term[2]) of the severance agreement defendants proposed for resolving *his* termination from Chrysler, *see* n.1, *supra*, and uses it as the sole basis for alleging the existence of a "conspiracy with regard to the employment of *personnel*" generally. Nothing in the complaint supports this speculative leap. It alleges no facts "sufficient to raise a plausible

---

[2] While plaintiff characterizes Section 7 as a "no hire" agreement, *see, e.g.,* FAC ¶¶ 30, 43, the Court notes that the quoted language from the proposed severance agreement is not a blanket agreement not to hire each other's employees who are subject to non-compete or no-hire provisions, but an agreement to provide each other with "notice and discussion" before hiring.

7

inference of an unlawful agreement to restrain trade." *Erie County*, 702 F.3d at 869.

Nor, indeed, does the complaint allege facts sufficient to raise a plausible inference that defendants reached any agreement of any kind, to say nothing of "evidence of illegal agreement." *Twombly*, 550 U.S. at 556. Plaintiff does not allege the terms of this agreement, or its nature and extent, or when defendants entered into it, but simply labels it an "anti-competitive arrangement," a "no-hire agreement and other anti-competitive arrangements," an "anti-competitive agreement, contract, combination or conspiracy," "the arrangement," and "the anti-competitive arrangement." FAC ¶¶ 42-46. Just as in *Total Benefits Planning Agency*, 552 F.3d at 437, the complaint in the present case "only offer[s] bare allegations without any reference to the 'who, what, where, when, how or why.'"

Nor does plaintiff make any plausible allegations that defendants' agreement, whatever it is and whenever it was entered into, "produced adverse anticompetitive effects within relevant products and geographic markets." *Crane & Shovel Sales Corp.*, 854 F.2d at 805. The complaint makes only the "formulaic recitation" of this element of the claim, *see* FAC ¶¶ 42-43, without identifying the product or the market and without alleging "how the market has changed or been damaged." *Caudill*, 2005 WL 2738930, at *7. Plaintiff's reference to "skilled employees" (whose skills are not identified) or some undefined "discrete group of skilled employees," FAC ¶ 42, does not begin to identify the relevant product or market.

In short, the Sherman Act allegations in the present case are precisely the type of labels, legal conclusions, formulaic recitations, and unsupported allegations which are not "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Such allegations do not state a claim upon which relief may be granted.

The Court concludes that the amended complaint fails to state an antitrust claim under the Sherman Act, and that Count I must therefore be dismissed. The two remaining claims, under the Michigan Antitrust Reform Act and for tortious interference with a business relationship, arise under state law. In accordance with *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966), the Court shall dismiss these claims without prejudice. *See also Brown v. Cassens Transp. Co.*, 546 F.3d 347, 363 (6th Cir. 2008) ("a federal court should typically decline to exercise pendent jurisdiction over a plaintiff's state-law claims after dismissing the plaintiff's federal claims"); *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (a federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims. . . . Residual jurisdiction should be exercised only in cases where the 'interests of judicial economy and the avoidance of multiplicity of litigation' outweigh our concern over 'needlessly deciding state law issues'"). Plaintiff is free to pursue these claims in state court, if he wishes to do so. Accordingly,

IT IS ORDERED that defendant ASI's motion to dismiss and defendant Chrysler's motion for judgment on the pleadings are granted as to Count I of the first amended complaint.

IT IS FURTHER ORDERED that Counts II and III of the first amended complaint are dismissed without prejudice for lack of subject matter jurisdiction.

                                                S/ Bernard A. Friedman_____
Dated: September 23, 2013         BERNARD A. FRIEDMAN
     Detroit, Michigan            SENIOR UNITED STATES DISTRICT JUDGE